IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID IERULLI,

    Plaintiff,

vs.                                          CASE NO: 8:22-cv-703

PROGRESSIVE EXPRESS
INSURANCE COMPANY, SACYR
CONSTRUCTION, S.A., INC., PEVIDA
HIGHWAY DESIGNERS, LLC, MSB SERVICES,
LLC AND CORE ENGINEERING GROUP, LLC,

    Defendants.
_____/

**FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, DAVID IERULLI, by and through undersigned counsel, and hereby sues Defendants, PROGRESSIVE EXPRESS INSURANCE COMPANY ("PROGRESSIVE"), SACYR CONSTRUCTION, S.A., INC. ("SACYR"), PEVIDA HIGHWAY DESIGNERS, LLC ("PEVIDA"), MSB SERVICES, LLC ("MSB") AND CORE ENGINEERING GROUP, LLC ("CORE"), and alleges:

1.    This is an action for damages in excess of $30,000, exclusive of attorneys' fees, interest and costs, and Plaintiff, DAVID IERULLI, hereby demands a trial by jury; accordingly, although, to file this complaint, undersigned counsel is being required by order of the Supreme Court of Florida to contemporaneously complete a civil cover sheet with a dollar figure as an estimated amount of claim for data collection and clerical processing purposes only, the full monetary value of the damages suffered by Plaintiff, DAVID IERULLI, is yet to be determined and will be decided in a verdict by the jury that judges the facts of this action in compliance with Article I, Section 21, Florida Constitution.

2. At all times material to this action, Plaintiff, DAVID IERULLI, was and is a resident of Manatee County, Florida.

3. At all times material to this action, Defendant, PROGRESSIVE EXPRESS INSURANCE COMPANY, was and is a corporation authorized to do business in Manatee County, Florida and transacts business in Manatee County. Additionally, Defendant, PROGRESSIVE EXPRESS INSURANCE COMPANY, has an agent or other representative in Manatee County to regularly conduct its business.

4. On or about February 28, 2019, at approximately 9:14pm Plaintiff, DAVID IERULLI, was traveling South on Interstate-75 approaching the State Road-681 ramp in Sarasota County, Florida.

5. On or about February 28, 2019, at approximately 9:14pm MARK DICKINSON was also operating a motor vehicle owned by STEVEN WIDENER traveling South on Interstate-75 approaching the State Road-681 ramp in Sarasota County. MARK DICKINSON was operating STEVEN WIDENER's vehicle in a negligent manner so that it collided with Plaintiff, DAVID IERULLI's vehicle.

6. As a direct and proximate result of MARK DICKINSON's negligence, the Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff will suffer these losses into the future.

7. On or about February 28, 2019, at approximately 10:36pm Plaintiff, DAVID IERULLI, was traveling North on the Northbound exit ramp of Interstate-75 approaching State Road 70 in Manatee County, Florida.

8. On or about February 28, 2019, at approximately 10:36pm MICHAEL HILL was traveling North on the Northbound exit ramp of Interstate-75 approaching State Road 70 in Manatee County, Florida and in the lane immediately to the left of Plaintiff, DAVID IERULLI.

9. On or about February 28, 2019, at approximately 10:36pm MAXWELL RUNDE was operating a motor vehicle owned by DENNIS RUNDE traveling East on State Road 70 approaching Interstate-75 in Manatee County. MAXWELL RUNDE was operating DENNIS RUNDE's vehicle in a negligent manner so that it collided with MICHAEL HILL's vehcile which than collided with Plaintiff, DAVID IERULLI's vehicle.

10. As a direct and proximate result of MAXWELL RUNDE's negligence, the Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff will suffer these losses into the future.

11. At all times material, Defendant SACYR was and is a foreign corporation for profit with its residence and principal place of business located at 3919 Coral Way, Suite 510, Miami, Florida 33145.

12. At all times material, Defendant SACYR was and is a general contractor licensed to perform roadway construction throughout the State of Florida by and through its employees, agents, representatives, and/or subcontractors under its control.

13. At all times material, Defendant SACYR was the general contractor performing roadway construction in Manatee County, Florida, pursuant to a contract with the Florida Department of Transportation, Contract No. T1709. The roadway construction involved widening 6.75 miles of Interstate-75 and reconstructing the Interstate-75/State Road 70 interchange (hereinafter "subject roadway construction").

14. At all times material, Defendant PEVIDA was and is a Florida Limited Liability Company with its residence and principal place of business located at 8600 Northwest 17th Street, Suite 200, Doral, Florida 33145.

15. At all times material, Defendant PEVIDA was and is a civil engineering firm licensed to perform highway design and engineering services throughout the State of Florida by and through its employees, agents, and/or representatives.

16. At all times material, Defendant PEVIDA performed highway design and engineering services in relation to the subject roadway construction pursuant to a contract and/or agreement with Defendant SACYR and/or the Florida Department of Transportation.

17. At all times material, Defendant MSB SERVICES was and is a Florida Limited Liability Company with its residence and principal place of business located at 3204 Lena Road, Bradenton, Florida 34211.

18. At all times material, Defendant MSB SERVICES was and is a contractor licensed to perform installation, maintenance, and inspection of traffic signals throughout the State of Florida by and through its employees, agents, and/or representatives.

19. At all times material, Defendant MSB SERVICES, LLC performed installation, maintenance, and inspection of temporary traffic signals in relation to the subject roadway construction pursuant to a contract and/or agreement with Defendant SACYR and/or the Florida Department of Transportation.

20. At all times material, Defendant CORE was and is a Florida Limited Liability Company authorized to conduct and conducting business in the State of Florida.

21. At all times material, Defendant CORE was and is a civil engineering firm licensed to perform highway design and engineering services throughout the State of Florida by and through its employees, agents, and/or representatives.

22. At all times material, Defendant CORE performed highway design and engineering services and consulting in relation to the subject roadway construction pursuant to a contract and/or agreement with Defendant PEVIDA and/or Defendant SACYR.

23. As part of the subject roadway construction, Defendant SACYR, Defendant PEVIDA, Defendant CORE, and/or Defendant MSB SERVICES, by and through its agents, employees, representatives, and/or subcontractors under its control, installed, approved, and/or recommended a temporary traffic signal with signal heads spanning across the eastbound lanes of State Road 70 just east of the Interstate-75 overpass. The signal was installed and maintained negligently, dangerously, and in violation of applicable codes and standards due to the limited visibility of the signal for motorists traveling eastbound on State Road 70. Specifically, the signal heads were hidden behind the Interstate-75 overpass because they were installed too high and too close to the east side of the overpass.

24. At all times material, Defendant PEVIDA, by and through its agents, employees, and/or representatives, designed, planned, recommended, installed, inspected, maintained, and/or approved the unreasonably dangerous traffic signal and performed duties contributing to the placement of the signal.

25. At all times material, Defendant CORE, by and through its agents, employees, and/or representatives, served as a paid consultant to Defendant SACYR and/or Defendant PEVIDA and was negligent in providing the guidance, recommendations, instructions, opinions, calculations, and approval that resulted in the placement and maintenance of the unreasonably dangerous traffic signal.

26. At all times material, Defendant MSB SERVICES, by and through its agents, employees, and/or representatives, designed, planned, recommended, installed, inspected, maintained, and/or approved the unreasonably dangerous traffic signal and performed duties contributing to the placement of the signal.

## COUNT I
## UNINSURED/UNDERINSURED MOTORIST CLAIM FOR FIRST CRASH

27. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 6 above as though fully set forth herein.

28. At the time of the collision on February 28, 2019 at approximately 9:14pm, Plaintiff, DAVID IERULLI, was an insured motorist covered under a policy of insurance with Defendant PROGRESSIVE, more particularly described as Policy No. 05939455-2. This policy was in full force and effect on February 28, 2019. A copy of the policy's declarations page is attached hereto as Exhibit "A".

29. Pursuant to the terms and conditions of the policy, Defendant PROGRESSIVE agreed to provide, among other benefits, uninsured/underinsured motorist coverage to Plaintiff, DAVID IERULLI, and agreed to pay Plaintiff DAVID IERULLI's damages from bodily injury caused by an accident which Plaintiff, DAVID IERULLI, is legally entitled to recover from the owner or operator of an uninsured automobile arising out of the ownership, maintenance or use of that automobile.

30. At the time of the subject accident, MARK DICKINSON and STEVEN WIDENER were uninsured motorists as defined by section 627.727, Florida Statutes, operating an uninsured automobile.

31. As a result of the negligence of MARK DICKINSON and STEVEN WIDENER described herein, Plaintiff, DAVID IERULLI, has suffered damages from bodily injury caused by an accident which Plaintiff, DAVID IERULLI, is legally entitled to recover from the owner or operator of an uninsured automobile arising out of other ownership, maintenance or use of that automobile.

32. To date, Defendant PROGRESSIVE has failed or refused to pay uninsured/underinsured motorist benefits to Plaintiff, DAVID IERULLI.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant PROGRESSIVE and a trial by jury on all issues and costs in this action.

## COUNT II
## UNINSURED/UNDERINSURED MOTORIST CLAIM FOR SECOND CRASH

33. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 3 and 7 through 26 above as though fully set forth herein.

34. At the time of the collision on February 28, 2019 at approximately 10:36pm, Plaintiff, DAVID IERULLI, was an insured motorist covered under a policy of insurance with Defendant PROGRESSIVE, more particularly described as Policy No. 05939455-2. This policy was in full force and effect on February 28, 2019. A copy of the policy's declarations page is attached hereto as Exhibit "A".

35. Pursuant to the terms and conditions of the policy, Defendant PROGRESSIVE agreed to provide, among other benefits, uninsured/underinsured motorist coverage to Plaintiff, DAVID IERULLI, and agreed to pay Plaintiff DAVID IERULLI's damages from bodily injury caused by an accident which Plaintiff, DAVID IERULLI, is legally entitled to recover from the owner or operator of an uninsured automobile arising out of the ownership, maintenance or use of that automobile.

36. At the time of the subject accident, MAXWELL RUNDE and DENNIS RUNDE were uninsured motorists as defined by section 627.727, Florida Statutes, operating an uninsured automobile.

37. As a result of the negligence of MAXWELL RUNDE and DENNIS RUNDE described herein, Plaintiff, DAVID IERULLI, has suffered damages from bodily injury caused by an accident which Plaintiff, DAVID IERULLI, is legally entitled to recover from the owner or operator of an uninsured automobile arising out of other ownership, maintenance or use of that automobile.

38. To date, Defendant PROGRESSIVE has failed or refused to pay uninsured/underinsured motorist benefits to Plaintiff, DAVID IERULLI.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant PROGRESSIVE and a trial by jury on all issues and costs in this action.

## COUNT III
## NEGLIGENCE AGAINST SACYR FOR SECOND CRASH

39. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 2 and 7 through 26 above as though fully set forth herein.

40. At all times material, Defendant SACYR owed a duty to the public, including Plaintiff, DAVID IERULLI, to exercise reasonable care in the operation of its construction activities on State Road 70.

41. At all times material, Defendant SACYR owed a further duty to the public, including Plaintiff, DAVID IERULLI, to refrain from creating unreasonably dangerous conditions at its construction site on State Road 70.

42. At all times material, Defendant SACYR was and is liable for the negligence of its employees, agents, representatives, and subcontractors under its control pursuant to the doctrine of respondeat superior.

43. At all times material, Defendant SACYR was negligent and breached its duties of care to the public, including Plaintiff, DAVID IERULLI, in one or more of the following ways:

   a. Failing to exercise reasonable care in the installation and inspection of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

    b.    Failing to comply with applicable codes and industry standards relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

    c.    Failing to ensure reasonably safe and appropriate heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

    d.    Failing to discover that the heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass were unreasonably dangerous; and/or

    e.    Failing to respond to complaints and concerns from the public relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass.

44. As a direct and proximate result of the negligence of Defendant SACYR, Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff, DAVID IERULLI, will suffer these losses into the future.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant SACYR and a trial by jury on all issues and costs in this action.

## COUNT IV
## NEGLIGENCE AGAINST PEVIDA FOR SECOND CRASH

45. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 2 and 7 through 26 above as though fully set forth herein.

46. At all times material, Defendant PEVIDA owed a duty to the public, including Plaintiff, DAVID IERULLI, to exercise reasonable care in the operation of its highway design and engineering activities on State Road 70.

47. At all times material, Defendant PEVIDA owed a further duty to the public, including Plaintiff, DAVID IERULLI, to refrain from creating unreasonably dangerous conditions at its construction site on State Road 70.

48. At all times material, Defendant PEVIDA expressly communicated to Defendant SACYR that the sight distance for the subject temporary traffic signal was in compliance with the mandatory minimum requirements when, in fact, it verifiably was not.

49. At all times material, Defendant PEVIDA was and is liable for the negligence of its employees, agents, and representatives pursuant to the doctrine of respondeat superior.

50. At all times material, Defendant PEVIDA was negligent and breached its duties of care to the public, including Plaintiff, DAVID IERULLI, in one or more of the following ways:

   a. Failing to exercise reasonable care in the design and planning of the temporary traffic signal at the intersection of State Road 70 and the Interstate75 overpass;

   b. Failing to exercise reasonable care in the inspection and/or testing of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass; 10

   c. Failing to comply with applicable codes and industry standards relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

    d.    Failing to ensure reasonably safe and appropriate heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

    e.    Failing to discover that the heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass were unreasonably dangerous; and/or

    f.    Failing to respond to complaints and concerns from the public relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass.

51. As a direct and proximate result of the negligence of Defendant PEVIDA, Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff, DAVID IERULLI, will suffer these losses into the future.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant PEVIDA and a trial by jury on all issues and costs in this action.

## COUNT V
## NEGLIGENCE AGAINST MSB FOR SECOND CRASH

52. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 2 and 7 through 26 above as though fully set forth herein.

53. At all times material, Defendant MSB owed a duty to the public, including Plaintiff, DAVID IERULLI, to exercise reasonable care in the operation of its highway design and engineering activities on State Road 70.

54. At all times material, Defendant MSB owed a further duty to the public, including Plaintiff DAVID IERULLI, to refrain from creating unreasonably dangerous conditions at its construction site on State Road 70.

55. At all times material, Defendant MSB was and is liable for the negligence of its employees, agents, and representatives pursuant to the doctrine of respondeat superior.

56. At all times material, Defendant MSB was negligent and breached its duties of care to the public, including Plaintiff, DAVID IERULLI, in one or more of the following ways:

   a. Failing to exercise reasonable care in the design and planning of the temporary traffic signal at the intersection of State Road 70 and the Interstate75 overpass;

   b. Failing to exercise reasonable care in the inspection and/or testing of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   c. Failing to comply with applicable codes and industry standards relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   d. Failing to ensure reasonably safe and appropriate heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   e. Failing to discover that the heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass were unreasonably dangerous; and/or

   f. Failing to respond to complaints and concerns from the public relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass.

57. As a direct and proximate result of the negligence of Defendant MSB, Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff, DAVID IERULLI, will suffer these losses into the future.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant MSB and a trial by jury on all issues and costs in this action.

## COUNT VI
## NEGLIGENCE AGAINST CORE FOR SECOND CRASH

58. Plaintiff, DAVID IERULLI, re-alleges and incorporates herein all of the allegations contained in paragraphs 1 through 2 and 7 through 26 above as though fully set forth herein.

59. At all times material, Defendant CORE owed a duty to the public, including Plaintiff, DAVID IERULLI, to exercise reasonable care in the provision of engineering services, consultation, recommendations, approval, and guidance relating to the subject temporary traffic signal.

60. At all times material, Defendant CORE owed a further duty to the public, including Plaintiff, DAVID IERULLI, to refrain from creating, recommending, and/or approving unreasonably dangerous conditions at the construction site on State Road 70.

61. At all times material, Defendant CORE expressly communicated to Defendant SACYR and/or Defendant PEVIDA that the sight distance for the subject temporary traffic signal was in compliance with the mandatory minimum requirements when, in fact, it verifiably was not.

62. At all times material, Defendant CORE was and is liable for the negligence of its employees, agents, and representatives pursuant to the doctrine of respondeat superior.

63. At all times material, Defendant CORE was negligent and breached its duties of care to the public, including Plaintiff, DAVID IERULLI, in one or more of the following ways:

   a. Failing to exercise reasonable care in the consultation, recommendations, and/or approval of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   b. Failing to exercise reasonable care in the inspection of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   c. Failing to comply with applicable codes and industry standards relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   d. Failing to ensure reasonably safe and appropriate heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   e. Failing to discover that the heights, sight distances, and visibility of the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass were unreasonably dangerous;

   f. Failing to respond to complaints and concerns relating to the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   g. Failing to make reasonable and appropriate recommendations regarding temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass;

   h. Failing to inform Defendant SACYR and/or Defendant PEVIDA that the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass did not meet minimum sight distance requirements;

      i.      Failing to confirm or verify in the field that the temporary traffic signal at the intersection of State Road 70 and the Interstate-75 overpass met minimum sight distance requirements; and/or

      j.      Failing to inform Defendant SACYR and/or Defendant PEVIDA that it was unwilling or unable to verify the sight distance of the subject temporary traffic signal in the field.

64.    As a direct and proximate result of the negligence of Defendant CORE, Plaintiff, DAVID IERULLI, suffered bodily injury, resulting in pain and suffering, disability, physical impairment, aggravation of a pre-existing condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing in nature, and Plaintiff, DAVID IERULLI, will suffer these losses into the future.

WHEREFORE Plaintiff, DAVID IERULLI, demands judgment for damages against Defendant CORE and a trial by jury on all issues and costs in this action.

DATED THIS __25____ day of April, 2022.

/s/ Christopher Donegan  
Stephen A. Barnes, 005177  
Christopher J. Donegan, 100703  
BARNES TRIAL GROUP  
505 South Magnolia Avenue  
Tampa, FL  33606  
Telephone: (813) 251-0777  
Facsimile:  (813) 254-1829  
btgservice@barnestrialgroup.com  
Attorneys for Plaintiff(s)